IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Adam S. Dearth, | : | |
| Plaintiff, | : | Civil Action 2:13-cv-00016 |
| v. | : | Judge Watson |
| Carolyn W. Colvin, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Adam S. Dearth brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his application for Supplemental Security Income benefits[1]. This matter is before the

Magistrate Judge for a report and recommendation on the administrative record and the

parties' merits briefs.

**Summary of Issues.** Plaintiff Dearth maintains that he became disabled on

August 13, 2009, at age 29, due to attention deficit hyperactivity disorder ("ADHD"),

dysthymic mood, depression, gastroesophageal reflux disease ("GERD"), arthralgia,

and chronic neck and shoulder pain. (*PageID* 205.)

---

[1]Plaintiff originally filed applications for both childhood disability and
Supplemental Security Income alleging an onset date of disability of July 1, 1999.
Plaintiff subsequently amended his onset date of disability to August 13, 2009, and
withdrew his application for childhood disability benefits. (*PageID* 202-03.) Therefore
the Court will base its review of the administrative decision on plaintiff's application for
Supplemental Security Income only.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge erred in failing to adopt the opinions of the consultative psychologist, Sylvester Briggs, Ph.D., and the treating physician, Jennifer Sylvester, M.D., as to Dearth's mental residual functional capacity.

**Procedural History.**  Plaintiff Dearth filed his application for supplemental security income on August 24, 2009, alleging that he became disabled on June 1, 1999 (see footnote 1), at age 19.  (*PageID* 191-93.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On May 23, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 84-100.)  A vocational expert also testified.  (*PageID* 100-07.)  On June 22, 2011, the administrative law judge issued a decision finding that Dearth was not disabled within the meaning of the Act.  (*PageID* 62-74.)  On November 23, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 51-55.)

**Age, Education, and Work Experience.**  Dearth was born on February 4, 1980. (*PageID* 212.)  He has a high school education.  (*PageID* 210.)  Dearth last worked in 1999. (*PageID* 88 and 201.) He was as a kitchen helper/bus boy in a restaurant.  (*PageID* 206.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Dearth's testimony at the administrative hearing as follows:

The claimant testified at hearing that he lived with his parents, never had drivers license but felt that he could get one if he had the money to afford it, and that he had received state medical assistance but the program had been terminated in the past.  The claimant further testified that in 1999 he was involved in a bike accident that injured his neck and continued to get worse over time.  He stated that he had many tests in 2002 and afterwards that showed various impairments including arthritis of the neck, dislocated neck, and other spinal and muscle problems.  The claimant continued to testify that he had a number of anxieties, depression, and compulsion related issues that had various causes.  He stated he could only lift up to twenty pounds, could only stand for short amounts of time and would experience light headedness, could only walk about three to four blocks on a good day because it takes the energy out of him, and that he had various movement and postural difficulties.  Finally, the claimant testified about his activities of daily living and stated that he helped with dishes, swept floors, took care of pets but could not walk them far, goes to the store with his father, brother, and sister, played video games and watched television, and that he wished he could work.  When asked whether he had tried to look for work he stated he could not work every day or all the time so he had not looked for work.  He stated that he did not do yard work, helped around the house as best he could, and he helped his father with some light cleaning chores.

(*PageID* 70-71.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence[2].

Sylvester Briggs, Ph.D.  Dr. Briggs performed a consultative psychological examination at the request of the state Bureau of Disability Determination on November 4, 2009.  (*PageID* 320-28.)  Dearth "reported that he typically feels overly anxious and

---

[2]In addition to mental impairments, the undersigned recognizes that Plaintiff alleges disability in part because of his physical impairments.  Plaintiff's Statement of Errors, however, focuses primarily on Plaintiff's mental impairments and limitations.  Accordingly, the Court will focus its review of the medical evidence on Plaintiff's mental impairments and limitations.

depressed about his current handicapped life situation; he is concerned about what his future is going to be like, as he is unable to physically function in the work force." (*PageID* 321).

Dr. Briggs noted during the mental status examination that Dearth, "presents as an apprehensive and depressed young person; he is unsure of himself." (*PageID* 323.) Dr. Briggs also noted Dearth was "an anxious, fretful and edgy young man." (*Id.*) Dr. Briggs found Dearth to be moderately impaired regarding his insight and judgment, explaining that Dearth is "unable to adequately perform independently in the wider society." (*PageID* 325.) Dearth had "a pervasive negative sense of himself" that stemmed from "his bike accident and devastating head injury." (*PageID* 326.) He was always thinking about that injury and his resulting "inability to function in the world." (*Id.*) Dr. Briggs diagnosed Dearth with a mood disorder due to head injury, an anxiety disorder due to head injury, and a pain disorder associated with both psychological factors and a general medical condition, and dependent personality disorder.  Plaintiff was assigned a Global Assessment of Functioning score of 55. (*PageID* 327.)

Dr. Briggs opined that Dearth is moderately impaired in his ability to relate to others, including co-workers and supervisors.  According to Dr. Briggs, Dearth is "psychologically unable to interact appropriately with most others because of his high level of anxiety and self doubting; therefore, currently he is not to employable." (*Id.*) Dr. Briggs opined that Dearth was moderately impaired in his ability to understand, remember, and follow instructions as "he will experience lifelong difficulties and

4

inabilities in not being able to perform all the expected tasks of daily living." (*Id.*)

Dearth "is currently cognitively, emotionally, and psychologically circumvented from

taking in potentially beneficial data from the wider environment." (*Id.*)  Dearth's ability

to maintain attention, concentration, persistence, and pace to perform repetitive,

routine, simple tasks was found to be moderately impaired.  Dr. Briggs found Dearth's

ability to withstand stress and pressures associated with day to day work activities is

markedly impaired.  Dr. Briggs concluded that Dearth "will not be emotionally,

physically, or psychologically capable of fully functioning within a demanding work

force." (*Id.*)

Jennifer Sylvester, M.D.  Dearth began seeing Dr. Sylvester, a family practitioner,

in February 2009.  (*PageID* 373.)  Dr. Sylvester treated him for his chronic back pain,

reflux and anorexia and also prescribed psychotropic medications to treat his dysthymic

mood disorder.  (*PageID* 289.)

On August 11, 2009, Dr. Sylvester's examination found that Dearth's affect was

very flat. His neck was supple. There was mild tenderness in the epigastric region of the

abdomen. His back was tender throughout. Muscle strength was 5/5. There were no

sensory deficits. (*PageID* 289.) On November 9, 2009, Dr. Sylvester's examination found

that Dearth's neck was supple. He had 4/5 muscle strength in all four extremities.

Sensation was intact. His range of motion was normal. (*PageID* 379.)

On January 11, 2010, Dearth reported to Dr. Sylvester that "He has a difficult

time focusing with stressful situations around him with his father concurring that he

will be overwhelmed and frustrated if there is increased stress. Otherwise, his pain and fatigue seem to come on frequently, which distract him from being able to stay focused on specific tasks without interruptions. All of this occurred after his motor vehicle accident in 1999, but did not affect him until roughly 2001." (*PageID* 377.) On examination, Dearth's neck was supple. His affect was flat. (*PageID* 377.) That same day, Dr. Sylvester completed a medical findings questionnaire. (*PageID* 372-74.) Dr. Sylvester concurred that mentally Dearth's condition would likely deteriorate if placed under stress, because he is "unable to focus with stress, he would get overwhelmed and frustrated." (*PageID* 373.) Dr. Sylvester also noted that Dearth's pain, fatigue or other symptoms would interfere with attention and concentration frequently. She noted that no therapy had helped. (*Id.*)


     Aracelis Rivera, Psy.D./Steven J. Meyer, Ph.D. After his review of the record on December 3, 2009, state agency psychologist, Dr. Rivera, reported that medically determinable impairments of a mood disorder and1 anxiety disorder both due to a head injury, pain disorder, and a dependent personality disorder were present, but not severe. (*PageID* 356-60.) Dr. Rivera opined that Dearth was mildly limited his activities of daily living, moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace, with no episodes of decompensation. (*PageID* 363.) Dr. Rivera further determined that the evidence did not establish the presence of the "C" criteria. (*PageID* 364.)

Dr. Rivera gave Dr. Briggs' conclusion regarding Dearth's marked limitations in stress "less" weight.  (*PageID* 369.)  Dr. Rivera opined that Dearth retained the capacity to perform simple and mildly complex tasks of repetitive nature in a setting that does not impose strict production quotas with superficial interpersonal interactions.  (*Id.*)  On March 26, 2010, Dr. Meyer, another state agency psychologist, affirmed Dr. Rivera's assessment.  (*PageID* 390.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1.    The claimant met the insured status requirements of the Social Security Act through February 3, 2002.

2.    The claimant has not engaged in substantial gainful activity since August 13, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: Degenerative Disc Disease and Associated Disorders of the Back, Mood Disorder, Anxiety Disorder, Pain Disorder, Attention Deficit Hyperactivity Disorder, and Dependent Personality Disorder, (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, [the administrative law judge] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes or scaffolds, and can only occasionally perform bilateral overhead reaching. In addition, the claimant must avoid concentrated exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights. Finally, the claimant is limited to the performance of simple, routine and repetitive tasks,

in a work environment where changes occur no more than occasionally, and where no greater than occasional interaction is had with the general public or coworkers.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 4, 1980 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 13, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*PageID* 64-74.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Dearth argues that the decision of the Commissioner

denying benefits should be reversed because the administrative law judge erred in

failing to adopt the opinions of the consultative psychologist, Sylvester Briggs, Ph.D.,

and the treating physician, Jennifer Sylvester, M.D., as to Dearth's mental residual

functional capacity.

**Analysis.** <u>Treating Physician: Legal Standard.</u> A treating doctor's opinion[3] on

the issue of disability is entitled to greater weight than that of a physician who has

---

[3]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimis*. *Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 416.927(c)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 375 (6th Cir. 2013).

examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 416.927(c)(2). When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004);*Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975).

20 C.F.R. §416.913(b), (c), (d), 416.926(b), and 416.927(a)(1)[4].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(c)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 416.927(c)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 416.927(c)(2); Social Security Ruling 96-2p.  *Gayheart v. Commissioner of Social Security*,  710 F.3d 365, 375 (6th Cir. 2013).  The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 416.927(c)(2)."[5]  *Gayheart*, 710 F.3d at 375.

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

---

[4]Section 416.927(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* §416.905. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* §416.908.

[5]Section 416.927(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

1.    A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2.    Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.    Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4.    Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5.    The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6.    If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7.    A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 416.927(c), are not used. These come into

play only when there are good reasons not to give the treating-source opinion

controlling weight.  20 C.F.R. § 416.927(c)(2)[6];  *Gayheart*,  710 F.3d at 376.

If there are good reasons to find that the treating-source opinion is not

controlling, then the decision-maker turns to evaluating all the medical source evidence

and determining what weight to assign to each source, including the treating sources. [7]

The Commissioner's regulations require the decision-maker to considers the

length of the relationship and frequency of examination; nature and extent of the

treatment relationship; how well-supported the opinion is by medical signs and

---

[6]Section 416.927(c)(2) provides, in relevant part:
If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.

(Emphasis added.)

[7]Even when the treating source's opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 416.927 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

laboratory findings; its consistency with the record as a whole; the treating source's

specialization; the source's familiarity with the Social Security program and

understanding of its evidentiary requirements; and the extent to which the source is

familiar with other information in the case record relevant to decision.  20 C.F.R. §

416.927(c)(1) through (6).  Subject to these guidelines, the Commissioner is the one

responsible for determining whether a claimant is disabled.  20 C.F.R. § 416.927(e).

The case law is consistent with the principals set out in Social Security Ruling 96-

2p.  A broad conclusory statement of a treating physician that his patient is disabled is

not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating

physician's opinion to have controlling weight it must have "sufficient data to support

the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th

Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may

reject the treating doctor's opinions when "good reasons are identified for not accepting

them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 416.927(c)(2)("We

will always give good reasons in our notice of determination or decision for the weight

we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378

F.3d 541, 544 (6th Cir. 2004). Even when the Commissioner determines not to give a

treator's opinion controlling weight, the decision-maker must evaluate the treator's

opinion using the factors set out in 20 C.F.R. § 416.927(c)(2). *Wilson*, 378 F.3d at 544;

*Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable

14

presumption that the treating physician's opinion "is entitled to great deference."

*Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above.

The Commissioner makes the final decision on the ultimate issue of disability. *Warner v.*

*Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human*

*Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human*

*Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v.*

*Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Physician: Discussion.  The administrative law judge rejected Dr.

Sylvester's opinion that Dearth was unable to focus with stress and he would get

overwhelmed and frustrated, in part, because Dr. Sylvester is not certified in the area of

mental health treatment.   (*PageID* 71.)  Plaintiff argues that the administrative law

judge failed to follow the regulations in evaluating Dr. Sylvester's opinion.  *See* Doc. 13

at *PageID* 407-08.  A review of the administrative law judge's decision reveals additional

reasons why he rejected Dr. Sylvester's opinion.  Dr. Sylvester did not conduct a mental

status evaluation or perform any psychiatric tests in forming her opinion.  Dr. Sylvester,

along with Dr. Briggs, based their opinions on Dearth's subjective complaints and

allegations.  (*PageID* 69, 71.)  Neither a treating physician's diagnosis nor his or her

statement that a claimant is disabled is determinative of the ultimate disability

determination under the Social Security Act.  *See Landsaw v. Secretary of Health and*

*Human Services*, 803 F.2d 211, 213 (6th Cir. 1986); *see also* 20 C.F.R. §416.927(d)(1).

The administrative law judge assigned Dr. Briggs' opinion "some" weight, finding it generally consistent with Dr. Rivera and Dr. Meyer's opinion except that he opined Dearth was markedly impaired in his ability to deal with the stress of day-to-day work.  (*PageID* 69, 72.)

In order to determine whether the administrative law judge acted properly in disagreeing with a medical source, I must first determine the medical source's classification.  Of the three types of medical sources-nonexamining sources, nontreating (but examining) sources, and treating sources-Dr. Briggs was the second.  *See* 20 C.F.R. § 416.902; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ( "A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [him]." ).  In contrast, Drs.  Rivera and Meyer were "nonexamining sources." *See Smith,* 482 F.3d at 875 ("A 'nonexamining source' is 'a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case.' ").

The Social Security Administration gives the most weight to opinions from a claimant's treating source; accordingly, an administrative law judge is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." (*Id.*)  However, this requirement only applies to *treating* sources. (*Id.* at 876.)  With regard to nontreating, but examining, sources, the agency will simply "[g]enerally [ ] give more weight to the opinion of a

source who has examined [the claimant] than to the opinion of a source who has not examined" him.  20 C.F.R. § 416.927(e)(1); *see also Smith*, 482 F.3d at 875.  Because Dr. Briggs should not have been afforded controlling weight, in order to determine how much weight to give Dr. Briggs's opinion, the Regulations require administrative law judges to weigh their opinions with the factors - supportability, consistency, specialization, etc. -described in 20 C.F.R. §416.927(e).

The record shows that the administrative law judge considered relevant factors in its determination to credit Dr. Rivera and Dr. Meyer's assessments over Dr. Briggs'. The administrative law judge agreed with Dr. Rivera and Dr. Meyer in rejecting Dr. Briggs' finding that Dearth would have marked limitation in his ability to deal with the stress of day-to-day work.  (*PageID* 72.)  The administrative law judge found that Dr. Briggs' conclusion was not fully supported by his own materials or the record as a whole.

The administrative law judge also gave only "some" weight to Dr. Briggs' opinion because it was inconsistent with Dearth's self-reported activities, the fact that Dearth had not received mental health treatment, Dearth general affect and not supported by Dearth's testimony at the administrative hearing.  (*PageID* 72.)  The administrative law judge's conclusion that Dr. Briggs' "markedly limited" functional capacity conclusion is not fully supported by the notes of his single meeting with Dearth is supported by substantial evidence.  The Court finds that the administrative

law judge did not err by placing more weight on the conclusions of Dr. Rivera and Dr.

Meyer than those of Dr. Briggs.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of

Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's

motion for summary judgment be **DENIED** and that defendant's motion for summary

judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within

fourteen (14) days, file and serve on all parties a motion for reconsideration by the

Court, specifically designating this Report and Recommendation, and the part thereof

in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b),

Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See*

*also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel
United States Magistrate Judge